SLIP OPINION       Cite as 2017 Ark. App. 47



# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–15–895

| | |
|---|---|
| W.J.S.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered**: February 1, 2017<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17JV-12-208]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

On September 17, 2015, the Circuit Court of Crawford County entered an order requiring W.J.S. to register as a juvenile sex offender. W.J.S. appealed to our court, contending that (1) the State's motion for registration should have been dismissed and (2) the circuit court clearly erred in ruling that he be required to register and in failing to make specific written findings on statutory factors. We affirmed on the first point but remanded on the second, instructing the circuit court to enter an order that satisfied the requirements of Arkansas Code Annotated section 9–27–356 (Repl. 2015). *See W.J.S. v. State*, 2016 Ark. App. 310, 495 S.W.3d 649. On remand, the circuit court entered an amended order comporting with our mandate. A supplemental record containing the amended order has been lodged in our court, and W.J.S. has filed a supplemental addendum to his original brief. We hold that the circuit court did not clearly err, and we affirm.

In making its decision to require a juvenile to register as a delinquent sex offender, the

circuit court shall consider the following factors:

(i) The seriousness of the offense;

(ii) The protection of society;

(iii) The level of planning and participation in the alleged offense;

(iv) The previous sex offender history of the juvenile, including whether the juvenile has been adjudicated delinquent for prior sex offenses;

(v) Whether there are facilities or programs available to the court that are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction;

(vi) The sex offender assessment and any other relevant written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(vii) Any other factors deemed relevant by the court.

Ark. Code Ann. § 9–27–356(e)(2)(A). The circuit court shall make written findings on all factors of subsection (e) and shall enter its order upon a finding by clear and convincing evidence that the  juvenile should or should not be required to register as a sex offender. Ark. Code Ann. § 9–27–356(f)(1),(2).

The State's motion prayed that W.J.S. be ordered to register as a juvenile sex offender. The motion stated in part,

> Based on the Community Notification Risk Assessment, it is the recommendation of Helen Chambers, LCSW, that [W.J.S.] continue to receive sex offender specific treatment, that he be required to live in a structured setting where he can be closely supervised and should not be in a home with younger children, and that he continue to have an adequate adult supervisor that is aware of his deviate sexual history and shall continue to follow his sex offender safety plan that shall include rules and guidelines that will reduce his contact with younger or more vulnerable individuals when contact is unavoidable. Additionally, it is recommended that [W.J.S.] be ordered to register as a Sex Offender, assisted by his Juvenile Probation Officer. . . .

SLIP OPINION

The circuit court found by clear and convincing evidence in its amended order that W.J.S. should be required to register as a sex offender. As for statutory factors to be considered, the amended order included the following written findings: (i) W.J.S.'s offense of fourth-degree sexual assault, which had been amended from Class Y felony rape, was a serious and forceful offense, and W.J.S. had acknowledged on two occasions that he sexually assaulted his five-year-old sister; (ii) the sex-offender assessment indicated that the likelihood of reoffending was high, therefore warranting the need for registration and notice to the community; (iii) the report further indicated that W.J.S.'s level of planning and participation in the offense was high, including his act of secluding himself and the victim in a closet where an offense was committed; (iv) his previous sexual history was "significant for this hearing as there are offenses mentioned in the report which are not charged in this court but indicate . . . a propensity to re-offend"; (v) W.J.S. had exhausted the facilities available to rehabilitate him prior to expiration of the court's jurisdiction, having been placed in Piney Ridge and committing an offense against another juvenile while in placement there; (vi) the court had fully reviewed the sex-offender assessment and recommendation relating to W.J.S.'s mental, physical, educational, and social history; and (vii) the court had fully reviewed testimony of Helen Chambers and her recommendation that W.J.S. be registered as a sex offender.

In making its decision, the circuit court considered the testimony of Helen Chambers—a therapist in the family treatment program in the University of Arkansas Medical School's Department of Pediatrics—and the risk assessment of fourteen-year-old W.J.S. that

SLIP OPINION

SLIP OPINION

she performed in July 2015. Ms. Chambers testified that she had obtained W.J.S.'s history of offenses and treatment from investigative reports, court documents, a psychosexual assessment-and-discharge summary from Piney Ridge Center; records from Lakeland Behavioral Health Systems; and records from Dayspring Behavioral Health Services. She stated that W.J.S. had been charged with the sexual abuse of a three-year-old boy and that she had assessed him at a high risk to reoffend based on all factors in her report. She noted that he had received treatment on two occasions in a residential setting and continued to have "pretty major thinking errors"; had aggressive and sexualized behaviors; and continued to question whether his sister was responsible for his abuse of her, which was "a serious sign" in someone who had been through so much treatment; continued to have sexual fantasies about his mother and his victim; and reported that he continued to have urges he found hard to control. Ms. Chambers noted that W.J.S. was living at home at the time she interviewed him and that, because of his sneaky behavior, his father was on edge and worried about the safety of younger children living in the home.

The risk-assessment report gave further details supplementing Ms. Chambers's testimony. W.J.S. admitted sexually abusing his six-year-old sister by oral, anal, and penile/vaginal contact. He "dry-humped" an eleven-year-old neighborhood boy and a nine-year-old neighborhood girl and engaged in potentially coercive sexual contact with boys his own age. He admitted exposing himself and performing anal sex on three boys while undergoing court-ordered residential treatment at Piney Ridge Center. He said that he

4

SLIP OPINION

"peer–pressured" these boys into having sex with him and that he was peer–pressured "into exposing his penis and masturbating in church."

After his adjudication, W.J.S. made little progress in residential treatment at Piney Ridge Center despite being there for more than a year. While he was there, he was subject to a probation revocation for violating the center's terms of treatment, and his father received weekly phone calls from the center regarding W.J.S.'s sexual behavior. At his discharge on September 11, 2013, W.J.S. was on Level I because of continued sexual acting-out behaviors.

After Piney Ridge, W.J.S. attended outpatient treatment at Dayspring until he admitted masturbating at school and entered another residential treatment facility, Lakeland Behavioral Health Systems, in December 2013 to attend its sexually maladaptive-behaviors program. His discharge summary from Lakeland in August 2014 stated that he had made excellent progress in therapy. In October 2014, the court ordered him to complete outpatient treatment at Dayspring, where he continued to receive sex–offender–specific treatment at the time of his assessment.

W.J.S. lived with his paternal grandmother after his discharge from Lakeland Behavioral Health Systems, but she kicked him out after he "masturbated into a teddy bear," stole from her, and repeatedly stabbed her refrigerator with a knife. At the time of the assessment, he was living at home with his parents and four younger siblings. His parents attempted to provide full-time supervision of him, including installing alarms on his bedroom door and windows to prevent him from getting out of his room at night. According to his

SLIP OPINION

father, W.J.S. continued to demonstrate impulsive and deceitful behavior even after completing treatment at Lakeland.

According to the report, W.J.S. believed his sister was at least partially responsible for her own sexual abuse, and he claimed that she could have screamed. He had trouble controlling sexual urges that he continued to have when he was sexually aroused or upset. W.J.S. insisted in his interview with Ms. Chambers that he would never sexually abuse a child again, said that he did well after treatment at Lakeland until the "urge" came back, and stated, "If I get in that mood I forget consequences." Based on her assessment, Ms. Chambers concluded that W.J.S. had a high risk to reoffend. She recommended requiring him to register as a sex offender as well, to continue receiving sex-offender-specific treatment, and to live in a structured setting where contact with younger children was limited.

On appeal, W.J.S. complains that the State did not produce the witnesses who provided the information that Ms. Chambers relied on. He points to evidence mitigating the need for registration: his successful treatment and discharge from Lakeland Behavioral Health Systems, subsequent to his unsuccessful treatment at Piney Ridge; his assessment at less than the highest level of threat; the absence of adjudicated sexual offenses from the time of the offense until the hearing; and the fact that some reported incidents had occurred before his treatment at Lakeland.

The arguments that W.J.S. presents on appeal are simply different views of the evidence presented to the circuit court, whose decision turned on the credibility of Ms.

Chambers and her assessment. When factual findings require clear and convincing evidence, the appellate court considers whether the circuit court's findings are clearly erroneous, with deference to the circuit court's superior opportunity to judge the credibility of the witnesses. *R.R. v. State*, 2010 Ark. App. 689, at 3. Where there are two possible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Id.*

Here, the risk assessment showed that W.J.S. had a history of sexually aggressive behaviors and that, despite treatment at two residential facilities and an outpatient facility, he continued to display deviant sexual arousal toward his mother and younger children. Despite progress at Lakeland, he continued to have deviant sexual urges and admitted forgetting the consequences of his actions once those urges were aroused. The assessment set forth numerous reasons to support Ms. Chambers's opinion that he was at a high risk to reoffend and should be required to register as a sex offender. We hold that the court did not clearly err in finding that registration should be ordered.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.